UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                             Case No. 21-cv-273-pp

CAPT BAUMANN, SGT BEBO,
LT KETTENHOVEN, JOHN KIND,
and ANDREW WICKMAN,

                Defendants.

**ORDER REOPENING CASE, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Joshua Howard, who is confined at Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision reopens the case, resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2 and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On March 16, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $6.64 by April 7, 2021. Dkt. No. 5. On April 13, 2021, the court dismissed the case based on the plaintiff's failure to pay that initial partial filing fee. Dkt. No. 6. A week later, the court received from the plaintiff a motion for reconsideration and request for a new deadline to pay the fee. Dkt. No. 8. The court granted the motion in part and ordered him to pay the initial partial filing fee by June 18, 2021. Dkt. No. 9. On June 10, 2021, the court received an initial partial filing fee of $10.00. The court will reopen the case and grant the plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

1.  *Transfer to Green Bay Correctional Institution*

The plaintiff alleges that when he transferred to Green Bay in October 2017, defendant John Kind, who is Green Bay's security director, knew the plaintiff was an advocate for prisoners' rights and that he had filed hundreds of complaints and dozens of lawsuits against Wisconsin Department of Corrections (DOC) staff. Dkt. No. 1 at ¶¶2-4.

2.  *Placement in Temporary Lock-Up (TLU)*

The plaintiff alleges that a few weeks after he transferred to Green Bay, he filled out a form to give his power of attorney to a family member and submitted a request to the "Inmate Complaint Examiner" (ICE) to have the form notarized. Id. at ¶5. The ICE allegedly told the plaintiff that defendant Baumann had to approve the form before it could be notarized, so the plaintiff sent it to Baumann. Id. at ¶6. The plaintiff alleges that after several weeks, he filed a complaint due to Baumann's failure to respond to or return his document and the ICE acknowledged his complaint on February 2, 2018. Id. at ¶¶7-8

One week later, on February 9, 2018, staff allegedly directed the plaintiff to meet with Baumann and defendant Lieutenant Kettenhoven. Id. at ¶8. The plaintiff states that at this meeting, they questioned him about "putting unsigned request slips in the mailbox about money not making it into inmate accounts." Id. at ¶9. The plaintiff alleges that he didn't know what they were talking about and that he told Baumann and Kettenhoven that he did not write

4

anonymous notes and that he didn't mind filing complaints when he had problems. Id. According to the plaintiff, Baumann abruptly told the plaintiff he was going on "TLU" (temporary lock-up) and they escorted him into the hallway and placed him in handcuffs. Id. at ¶10. Baumann allegedly leaned in and told the plaintiff, "by the way, you can consider this my denial of your POA (power of attorney)." Id. The plaintiff asserts that Baumann and Kettenhoven did have him placed in temporary lockup and then moved to the restricted housing unit (segregation). Id. at ¶11. Baumann allegedly sent the plaintiff's power of attorney to his segregation cell and the underlying complaint was dismissed based on his statement that the form was incompletely filled out, which the plaintiff says was not true. Id. at ¶15.

The plaintiff alleges that when Baumann and Kettenhoven had him placed on TLU, they did not ensure that the controlled medication he takes for his depression, anxiety and insomnia was forwarded and it took three days for his medication to become available which caused severe symptoms of withdrawal for the first week of his stay in segregation. Id. at ¶¶11-12.

The plaintiff alleges that after Baumann and Kettenhoven placed him on TLU, they ordered defendant Sergeant Bebo to go back and listen to all the plaintiff's recorded phone calls for evidence of misconduct that would support a major conduct report. Id. at ¶13. According to the plaintiff, upon conclusion of Bebo's investigation, Zaumann and Kettenhoven were aware that there was no evidence to support the plaintiff's continued placement in TLU. Id. at ¶14.

The plaintiff alleges that he filed a complaint due to a lack of information about the reason for his placement in TLU and defendant Kind's failure to conduct an initial review of his TLU placement, which allegedly violated "DOC 303.11."[1] Id. at ¶¶16-19. He says that in anticipation of his first seven-day TLU review, he wrote to Kind and pointed out that his TLU placement form lacked information. Id. at ¶20. The plaintiff states that he also told Kind that he had three active cases and needed access to a typewriter to meet a deadline. Id. The plaintiff says that in response, he was informed that policy regarding the TLU placement form was being followed and that he should put in a request for the law library. Id. at ¶21. The plaintiff says he did this repeatedly over three weeks, but never received a pass or a reply. Id.

---

[1] Wis. Admin. Code §303.11 concerns assault. The court assumes the plaintiff means §DOC 303.10, which addresses the use of temporary lock up in DOC prisons and provides in relevant part:

> (2) If the security supervisor places an inmate in TLU, the security director or correctional center superintendent shall review this action within 2 working days. Before this review and the review provided in sub. (3), the institution shall provide the inmate with the reason for confinement and with an opportunity to respond, either orally or in writing. If upon review, the security director or the correctional center superintendent determines that TLU is not appropriate, the institution shall release the inmate from TLU as soon as practicable.
>
> (3) The institution may not allow any inmate to remain in TLU more than 21 days, except that the warden may extend this period for up to 21 additional days. The administrator may extend an inmate's time in TLU for a second time. The security director or correctional center superintendent shall review the status of each inmate in TLU every 7 days to determine whether TLU continues to be appropriate.

The plaintiff alleges that when staff brought him his allowable property in TLU, the staff member gave him a book the plaintiff had never seen before that the officer said was from his property. Id. at ¶22.

### 3. *Conduct Report*

The plaintiff alleges that the defendants could keep him on TLU for only three weeks, so he believes they "sought to strategically 'stack' whatever conduct reports they could so that the apparent frequency of misconduct could be used as a factor to increase the seriousness of the conduct with the hopes of being able to tack on a segregation sentence onto the plaintiff's TLU time." Id. at ¶24. The plaintiff alleges that "[t]heir opportunity came when CO Spencer was processing the property of the inmates who had been placed on TLU the previous week." Id. at ¶25. According to the plaintiff, while processing the property bins on February 14, 2018, Spencer pricked his finger on a sharp object while picking up a book, which apparently held a needle. Id. at ¶26. The plaintiff alleges, "[u]pon information and belief," that the defendants used the time that Spencer went to the hospital "to alter the records and/or arrange the [property] bins so that the contraband needle would be attributed to the plaintiff's property bin." Id. at ¶27.

The plaintiff alleges that when Spencer returned, he found another needle in the book and that the bin contained other contraband. Id. at ¶28. Spencer (not a defendant) allegedly issued the plaintiff a conduct report alleging that the contraband items were found in his property and on February 16, 2018, Kind approved the classification of the conduct report as a major

7

conduct report. Id. at ¶29. The plaintiff states that, in addition to having received someone else's book, the plaintiff's property sheet did not support that the contraband items were found in his property. Id. at ¶30. He says that on February 16, 2018, a staff member wrote "2/16 No CR" next to the pending investigation on the reasons for placement section of the plaintiff's TLU notice. Id. at ¶31. Despite this finding, the defendants allegedly did not release the plaintiff from TLU and upon conducting his first seven-day review on February 19, 2018, defendant Kind confirmed that his TLU placement was still appropriate. Id. at ¶32.

The plaintiff alleges that while treating the contraband/needles conduct report with the seriousness that it facially deserved should have accomplished the defendants' goal of having the plaintiff placed in segregation long-term, it would have also triggered due process rights which would have made it more likely that the plaintiff would challenge it in state court and, depending on the severity of the punishment, follow that with a lawsuit in federal court. Id. at ¶34. The plaintiff states that, aware of this and the fact that the only documentation did not support his guilt, the defendants sought to obtain a quick minor adjudication on that report to give them cause to upgrade any subsequent report to a major violation. Id.

The plaintiff alleges that on February 19, 2018, defendant Wickman offered him thirty days loss of phone privileges if he agreed not to contest the major conduct report. Id. at ¶35. The plaintiff says he told Wickman he did not want to plead guilty due to the seriousness of the offense and injury, and he

8

showed Wickman his property sheet and the book that was found in his property and explained that there must have been a mix-up with the TLU property bins. Id. at ¶36. Wickman allegedly appeared "irritated," and he falsely recorded that the plaintiff refused to sign the section meant to acknowledge receipt of the DOC-71 form. Id. at ¶37.

The plaintiff alleges that by this point, he was in his second week in TLU and Kind failed to conduct his second seven-day TLU review. Id. at ¶38.

The plaintiff alleges that on February 26, 2018, he attended his due process hearing on the conduct report and that Wickman, the hearing officer, found him guilty of possessing contraband and sentenced him to thirty days loss of phone privileges. Id. at ¶39. In his reasons for decision, Wickman allegedly did not include evidence the plaintiff had submitted including the book and his property sheet. Id. at ¶40.

4. *Release from TLU and Second Conduct Report*

The plaintiff says that he was released back to the general population on February 28, 2018. Id. at ¶41. Three days later, a security supervisor allegedly gave him a conduct report along with an offer of 60 days in segregation if he pled guilty. Id. The plaintiff says that Bebo issued the conduct report and Kind approved it to proceed as a "major." Id. at ¶42. According to the plaintiff, the conduct report alleged that when Bebo had reviewed recordings of the plaintiff's phone calls on February 10, 2018, he discovered that while at recreation on January 31, 2018, the plaintiff had used the phone using the pin numbers of other inmates. Id. at ¶42.

9

The plaintiff states that, due to the inmate phone system and access to the phones, "it is fairly common for inmates to use another's pin if there are phones not being used." Id. at ¶43. The plaintiff alleges that he informed the supervisor that he had already received a minor conduct report for using other pin numbers at recreation on January 31, 2018, and asked how a conduct report for the same conduct could support a minor conduct report one week and a major the next. Id. at ¶44.

      5.    *Plaintiff's Claims*

The plaintiff alleges that the defendants conspired with each other to punish the plaintiff for filing complaints and engaging in other activity protected by the First Amendment. Id. at ¶45.

He alleges that Baumann and Kettenhoven knew before placing him on TLU that he had no involvement in their investigation or, at the very least, became aware of this fact upon conclusion of Bebo reviewing his phone recordings on February 10, 2018, but they kept him on TLU status anyway. Id. at ¶46.

The plaintiff alleges that Kind denied him his due process right to a fair initial and seven-day review of his TLU placement when he kept him on the status fully aware that he did not meet the requirements of §DOC 303.11 (again, the court assumes the plaintiff means §DOC 303.10), when he failed to conduct a second seven-day review and to order his release after it was determined on February 16, 2018 that the plaintiff would not be receiving a conduct report. Id. at ¶47.

10

Case 2:21-cv-00273-PP   Filed 08/29/22   Page 10 of 18   Document 10

The plaintiff alleges that the defendants either placed contraband items in his TLU bin or altered the paperwork to falsely reflect that they were located amongst his property, in order to support the issuance of a baseless conduct report. Id. at ¶48.

The plaintiff alleges that the defendants, including Wickman, violated the plaintiff's due process rights when he refused to consider and record the evidence at the hearing, fully aware that the conduct report had been fabricated in response to the plaintiff engaging in protected speech. Id. at ¶49.

The plaintiff alleges that the defendants, including Kind and Bebo, further retaliated against the plaintiff by strategically waiting until the plaintiff was back in general population to issue and approve the major conduct report concerning actions for which the plaintiff already had received punishment. Id. at ¶50.

The plaintiff seeks declaratory relief and nominal, compensatory and punitive damages. Id. at page 11.

C.  Analysis

It appears that the plaintiff wants to proceed against all defendants on a conspiracy theory, alleging that they conspired with each other to punish the plaintiff for filing complaints and engaging in other First Amendment protected activity. Dkt. No. 1 at 10. This general allegation does not state a conspiracy claim. See, e.g., Cooney v. Rossiter, 583 F.3d 967, 970-71 (7th Cir. 2009); Ryan v. Mary Immaculate Queen Ctr., 188 F.3d 857, 860 (7th Cir. 1999). Particularly when a case may be "paranoid pro se litigation" and the complaint alleges "a

11

vast, encompassing conspiracy," the plaintiff must "meet a high standard of plausibility." Cooney, 583 F.3d at 971. To plead a plausible conspiracy, the plaintiff must allege facts showing an agreement among the defendants to inflict constitutional harm. See, *e.g.*, Ryan, 188 F.3d at 860. "Such allegations usually take one of two forms: (1) direct allegations of an agreement, like an admission by a defendant that the parties conspired; or (2) more often, circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." Alarm Detection Sys., Inc. v. Vill. of Schaumburg, 930 F.3d 812, 827 (7th Cir. 2019).

The plaintiff has not made direct allegations of an agreement among the defendants to retaliate, such as by alleging that one of the defendants admitted that they all conspired. His conspiracy claim may proceed only if the complaint contains circumstantial allegations giving rise to a plausible inference that an agreement existed. It does not. The plaintiff pleads a series of instances in which individual staff members allegedly punished him, and he contends that each instance of punishment was retaliation for engaging in protected activity. Even if the plaintiff's allegations give rise to a plausible inference that one or more staff members retaliated against him for engaging in protected activity, it would not follow that each act of retaliation was taken pursuant to a single agreement among all defendants. The retaliatory acts might have been the result of individual decisions by each defendant to retaliate. The plaintiff alleges that several correctional officers had their own reasons for retaliating against him. For example, he alleges Baumann and Kettenhoven had him

12

placed at TLU after he filed a complaint against Baumann for not authorizing his power of attorney form to be notarized. And the plaintiff alleges that he filed an inmate complaint against Kind due to a lack of information on the reason for his placement in TLU and Kind's failure to conduct an initial review of the placement; he alleges that Kind subsequently failed to conduct a second seven-day review and to order his release and approved the February 16, 2018 conduct from CO Spencer as a major conduct report.

If the defendants made independent decisions to retaliate against the plaintiff without tacitly or expressly agreeing to do so, then no conspiracy existed, because the defendants did not all agree with one another to retaliate. Cf. Twombly, 550 U.S. at 553-54 (recognizing that a series of independent decisions does not constitute a "contract, combination, or conspiracy" under the Sherman Act). The plaintiff has pled no facts giving rise to a reasonable inference that the alleged retaliatory acts were the product of an agreement to retaliate rather than independent decisions by the defendants. He simply identifies several acts of alleged retaliation and speculates that they must have been the result of a conspiracy among the defendants to retaliate. See Daugherty v. Harrington, 906 F.3d 606, 612 (7th Cir. 2018) (a plaintiff may not rely on mere speculation that a conspiracy exists).

That leaves the plaintiff's substantive claims against the individual defendants. While multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and

13

Case 2:21-cv-00273-PP   Filed 08/29/22   Page 13 of 18   Document 10

20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); George, 507 F.3d at 607; Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions").

For example, when a plaintiff has one claim against Defendants A, B, C, and D and an unrelated claim against Defendants A, B, and E, if the plaintiff wants to proceed with both claims in the same case Rules 18 and 20 require that he dismiss defendants C, D, and E. That way, he can proceed against the two defendants (A and B) who are common to both claims. If the plaintiff wants to pursue clams against defendants C, D, and E, he must pursue separate lawsuits. Under Rule 18 the plaintiff can join as many claims as he wants against an opposing party, but in doing so he still must comply with Rule 20.

The plaintiff's complaint violates Rules 18 and 20 because it attempts to bring unrelated claims against multiple defendants. The plaintiff appears to want to bring claims against Baumann and Kettenhoven for placing him in TLU, against Kind for not following DOC rules after the plaintiff transferred to TLU, against all the defendants for fabricating the first conduct report, against Kind for approving the first conduct report as a major conduct report, against Wickman for not considering evidence at the due process hearing and against

14

Bebo and Kind based on the second conduct report. These claims do not belong in the same case.

The court must reject the plaintiff's complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Before choosing which of those actions to take on the plaintiff's behalf, the court will give the plaintiff an opportunity to choose which of the above-described unrelated claims he wants to pursue in this case. The plaintiff may, by the deadline set below, file an amended complaint that focuses on the related claim(s) of his choice. The plaintiff may bring his other claims in separate lawsuits, if he wishes to do so. If the plaintiff does not file an amended complaint consistent with the instructions in this decision, the court will allow the plaintiff to proceed only on a retaliation claim against Baumann and Kettenhoven and will dismiss the improperly joined defendants and/or claims.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

15

Case 2:21-cv-00273-PP   Filed 08/29/22   Page 15 of 18   Document 10

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, rather than repeating in the amended complaint any of the facts from the original complaint that are necessary to his claims.

### III. Conclusion

The court **ORDERS** that the clerk's office must **REOPEN** the case.

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order in time for the court to receive it by the end of the day on **September 23, 2022**. If the plaintiff does not file an amended complaint in time for the court to *receive* it by the end of the day on September 23, 2022, the court will allow him to proceed on a retaliation claim against defendants Baumann and Kettenhoven and will dismiss the improperly joined defendants and/or claims.

16

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$333.36** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Fox Lake Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 29th day of August, 2021.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**