UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                                Case No. 21-cv-273-pp

CAPT BAUMANN, SGT. BEBO,
and LT. KENNENHOVEN,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 14)**

      Joshua Howard, who is incarcerated at the Fox Lake Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. The court screened the complaint and found that it violated Federal Rules of Civil Procedure 18 and 20 because it attempted to bring unrelated claims against multiple defendants. Dkt. No. 10 at 14. The court gave the plaintiff an opportunity to file an amended complaint that focused on the related claim(s) of his choice. Id. at 15. The plaintiff has timely filed an amended complaint. Dkt. No. 14. This order screens that amended complaint.

**I.**    **Screening the Amended Complaint**

      A.    <u>Federal Screening Standard</u>

      Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

1

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names as defendants Captain Baumann, Sergeant Bebo and Lieutenant Kettenhoven. Dkt. No. 1 at 1. The plaintiff alleges that the defendants, who are security officers at Green Bay Correctional Institution, conspired to retaliate against him because he filed a complaint against a security captain. Id. at ¶1.

The plaintiff alleges that when he sought to give power-of-attorney (POA) to a family member, the notary told him that Baumann needed to approve the POA before it could be notarized. Id. ¶2. The plaintiff states that he forwarded the POA to Baumann for approval; he says that when he didn't hear back, he wrote to Baumann but got no response. Id. at ¶2, 3. After several weeks, the plaintiff allegedly filed a complaint due to Baumann's failure to respond or return his document. Id. at ¶3.

The plaintiff alleges that the inmate complaint examiner acknowledged his complaint on February 2, 2018; he believes the examiner discussed the complaint with Baumann "shortly thereafter." Id. at ¶4. The plaintiff states that one week later, cell hall staff instructed him to report to the rotunda; he was directed to a room where Baumann and Kettenhoven were seated at a table waiting for him. Id. at ¶5. The plaintiff alleges that they asked him about "putting unsigned request slips in the mailbox complaining that money was being deposited but not making it into inmate accounts." Id. at ¶6. The plaintiff alleges that Baumann and Kettenhoven did not actually suspect that the plaintiff placed anonymous notes in the mailbox but used this investigation as a pretext. Id. at ¶8. He alleges that the cell hall and rotunda mailboxes are in plain view of cameras and that the defendants would have been able to identify anyone who put something in the mailbox "that did not bear their name." Id. at ¶7. The plaintiff says he explained that, as the defendants should be aware, he

3

Case 2:21-cv-00273-PP   Filed 11/07/22   Page 3 of 10   Document 15

was not shy about filing complaints when he had a problem and that he does not write anonymous notes. Id. at ¶9. Baumann allegedly abruptly told the plaintiff that he was going on "TLU" (presumably, temporary lock-up). Id. at ¶10. Kettenhoven allegedly pat-searched the plaintiff and placed handcuffs on him. Id. at ¶11. The plaintiff states that Baumann leaned to the plaintiff's left ear and stated, "by the way, you can consider this my denial of your POA." Id.

The plaintiff alleges that he takes daily medication to treat his severe symptoms of insomnia, anxiety, and depression and that Baumann and Kettenhoven escorted him to the segregation unit without, as required under institution policy, simultaneously collecting his medication and transporting it. Id. at ¶12. The plaintiff states that he had previously experienced lapses in his medication when transferred to segregation and suffered extreme withdrawal effects which included severe nausea, body aches, migraines, insomnia and suicidal ideations. Id. at ¶14. The plaintiff allegedly "asked about his medications and he was told that they would be sent over and would be available that evening." Id. The plaintiff alleges that his medication did not become available for three days and that he suffered several days of severe withdrawal effects. Id. at ¶15.

Next, the plaintiff alleges that "[u]pon information and belief, the anonymous note investigation did not meet the requirements to have someone placed on TLU, *i.e.*, if the inmate remained in general population he would be an impediment to the investigation, a danger to the physical safety of others, or a disruption to the operation of the institution, but due to inadequate oversight the Defendants knew their placement would not be overruled." Id. at ¶16. The plaintiff states that the defendants intended to cause as much harm to the plaintiff as they could and, aware that the plaintiff could only be held in

4

segregation for twenty-one days without issuing him a conduct report related to the note investigation, Baumann and Kettenhoven conspired with Bebo "to find cause to have the Plaintiff sent to segregation for a longer period of time." Id. at ¶17.

The plaintiff alleges that on February 9, 2018, Bebo listened to all the plaintiff's phone calls for evidence of misconduct but did not find any legitimate cause to write him a conduct report. Id. at ¶18. The plaintiff states that, "[u]pon information and belief, on 2.10.18, Bebo reported to Defendants Baumann and Kettenhoven that the only misconduct he found was that the Plaintiff used another inmate's PIN in order to make back-to-back phone calls while at recreation but that he had already received a minor conduct report for doing so." Id. at ¶19. The plaintiff alleges that the defendants agreed that they would still have Bebo write another contact report, but he says that if it was issued on February 10, it would overlap and effectively cancel the twenty-one days the plaintiff would be on TLU, so they agreed that they could wait until the plaintiff had served the twenty-one days on TLU and then have Bebo issue the duplicative conduct report. Id. at ¶20. The plaintiff alleges that, "[h]aving agreed to let the 21 day TLU expire without charges, Defendant Baumann wrote '2/16 No CR' on the Plaintiffs DOC-67, indicating that as of that date he officially cleared the Plaintiff from the anonymous note investigation." Id. at ¶21. Despite this notation, the defendants allegedly did not release the plaintiff from TLU on February 16 and made him sit in segregation another two weeks. Id. Baumann allegedly sent the plaintiff's POA to his segregation cell and the related complaint was dismissed based on Baumann's false statement to the inmate complaint examiner that the POA was not filled out completely. Id. at ¶22.

5

The plaintiff alleges that he was released back into general population on February 28, 2018, and the next day a security supervisor came to his cell and handed him a conduct report issued by Bebo. Id. at ¶23. The plaintiff allegedly reviewed the major conduct report in which Bebo stated that on February 10 he reviewed the plaintiff's phone calls and discovered that while at recreation on January 31, the plaintiff had used the PIN numbers of other incarcerated persons. Id. at ¶24. He says that the report failed to explain why Bebo waited almost three weeks to issue the conduct report. Id. The plaintiff alleges that the supervisor offered him sixty days in segregation if he pled guilty to the conduct report. Id. at ¶25. The plaintiff allegedly stated that he already had received a minor conduct report for using the PINs of other incarcerated persons at recreation on January 31, and he asked how the same conduct could now support a major conduct report and two months in segregation. Id. The plaintiff says that the supervisor left to confirm the plaintiff's assertion and never returned. Id. at ¶26.

The plaintiff claims that Baumann and Kettenhoven retaliated against him when they interrogated him for something they knew he did not do and then placed him on TLU without legitimate cause. Id. at ¶27.

The plaintiff also claims that Baumann and Kettenhoven acted with deliberate indifference to his serious medical needs when they failed to follow policy which required them to transfer the plaintiff's medication when they transported him to TLU. Id. at ¶28. The plaintiff claims that the two knew the plaintiff had controlled medication when he arrived in segregation and that their failure to ensure that it was transferred and made available to him displayed deliberate indifference which foreseeably led to him suffering symptoms of extreme withdrawal. Id. at ¶29.

The plaintiff claims that Baumann, Kettenhoven and Bebo conspired to retaliate against him by having him remain in TLU even though Bebo's February 10, 2018 investigation found no cause for him to stay in segregation on that status. Id. at ¶30. The plaintiff claims that Baumann, Kettenhoven and Bebo also conspired to retaliate against him by having Bebo wait until the plaintiff was released from segregation to issue him a baseless conduct report "in an effort to have him spend another two months in segregation." Id. at ¶31.

C. Analysis

To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." Perez v. Fenoglio, 792 F.3d 768, 783 (7th Cir. 2015) (quoting Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff has alleged that he engaged in conduct protected by the First Amendment—he filed a complaint against Baumann for not responding to his request to approve the POA. He has alleged that he suffered a deprivation that likely would deter such complaints in the future and that his complaint was at least a motivating factor in subjecting him to that deprivation—he says that Baumann and Kettenhoven interrogated him for something they knew he did not do and then placed him on TLU without legitimate cause.

But the plaintiff has not stated a claim that Baumann and Kettenhoven conspired with Bebo to retaliate against him. The plaintiff alleges that Baumann and Kettenhoven wanted to cause as much harm to the plaintiff as they could, knew the plaintiff could spend up to only twenty-one days in TLU without issuing him a conduct report related to the anonymous note

7

investigation and that Baumann and Kettenhoven therefore conspired with Bebo to have the plaintiff sent to segregation for longer than twenty-one days. Dkt. No. 1 at ¶17. The plaintiff alleges that the defendants agreed that they would have Bebo issue the plaintiff a duplicative conduct report after the plaintiff had served his twenty-one days in TLU. Id. at ¶20. The plaintiff alleges that he was released back to general population on February 28, 2018, and the next day a security supervisor came to his cell, gave him a major conduct report issued by Bebo and offered him sixty days in segregation if he pled guilty to the conduct report. Id. at ¶¶23-25. The plaintiff alleges that he told the supervisor that he already received a minor conduct report for the same conduct, the supervisor left to confirm the plaintiff's assertion and never returned. Id. at ¶26. The plaintiff does not allege that he was subsequently issued the conduct report that Bebo authored or that he spent any time in segregation based on the Bebo's actions. The plaintiff has not alleged that he suffered a deprivation likely to deter future First Amendment activity based on Bebo's alleged conduct. See Douglas v. Reeves, 964 F.3d 643, 646-48 (7th Cir. 2020). The plaintiff has not pled a plausible retaliation, or conspiracy to retaliate, claim against Bebo.

Turning to the plaintiff's allegation that Baumann and Kettenhoven failed to transport his medications along with him to TLU, a prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of a prisoner. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that

condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff's allegation that Baumann and Kettenhoven escorted him to TLU without his medication, in violation of policy, does not state a claim for violation of the plaintiff's constitutional rights. A violation of state laws or regulations is not a basis for a federal civil rights case. See Williams v. Mierzejewski, 401 F. App'x 142, 144 (7th Cir. 2010) (citing Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010); Domka v. Portage Cty., Wis., 523 F.3d 776, 784 (7th Cir. 2008)). The plaintiff alleges that when he arrived in TLU, he asked about his medication and that he was told that it would be sent over and available that evening. The plaintiff does not allege that Baumann or Kettenhoven had any responsibility for the fact that his medication was not available that evening or that they had any reason to think he would not receive his medication that evening or for the next three days. The plaintiff has not stated a constitutional medical care claim against Baumann and Kettenhoven.

The plaintiff may proceed on a retaliation claim against Baumann and Kettenhoven based on allegations that they interrogated him for something

9

they knew he did not do and then placed him on TLU without legitimate cause in retaliation for the plaintiff filing an inmate complaint against Baumann. The court will dismiss Bebo because the plaintiff has not stated a claim against him. The plaintiff has not stated a medical care claim against Baumann and Kettenhoven.

## II. Conclusion

The court **ORDERS** that defendant Bebo is **DISMISSED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Captain Baumann and Lieutenant Kettenhoven. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the amended complaint within 60 days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin, this 7th day of November, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**