UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA HOWARD,

                Plaintiff,

v.                                             Case No. 21-cv-273-pp

CAPT. BAUMANN and LT. KETTENHOVEN,

                Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 20)**

      Joshua Howard, who is incarcerated at Fox Lake Correctional Institution and is representing himself, filed this case alleging that the defendants violated his constitutional rights when he was incarcerated at Green Bay Correctional Institution. Dkt. No. 1. The court screened the amended complaint (Dkt. No. 14) and allowed the plaintiff to proceed on a retaliation claim against defendants Captain Baumann and Lieutenant Kettenhoven based on allegations that they interrogated the plaintiff for something they knew he did not do and then placed him on "TLU" (presumably, temporary lock-up) without legitimate cause in retaliation for the plaintiff filing an administrative complaint against Baumann. Dkt. No. 15 at 9-10. The defendants have filed a motion for summary judgment, arguing that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 20. The court will deny the defendants' motion.

## I. Facts[1]

### A. Plaintiff's Retaliation Claim

In the amended complaint, the plaintiff alleges that when he sought to give power-of-attorney (POA) to a family member, the notary told him that defendant Baumann needed to approve the POA before it could be notarized. Dkt. No. 14 at ¶2. The plaintiff states that he forwarded the POA to Baumann for approval; he says that when he didn't hear back, he wrote to Baumann but got no response. Id. at ¶¶2, 3. After several weeks, the plaintiff allegedly filed a complaint due to Baumann's failure to respond or return his document. Id. at ¶3.

The plaintiff alleges that the institution complaint examiner (ICE) acknowledged his complaint on February 2, 2018; he believes the examiner discussed the complaint with Baumann "shortly thereafter." Id. at ¶4. The plaintiff states that one week later, cell hall staff instructed him to report to the rotunda; he was directed to a room where defendants Baumann and Kettenhoven were seated at a table waiting for him. Id. at ¶5. The plaintiff alleges that they asked him about "putting unsigned request slips in the mailbox complaining that money was being deposited but not making it into inmate accounts." Id. at ¶6. The plaintiff alleges that Baumann and Kettenhoven did not actually suspect that the plaintiff placed anonymous notes in the mailbox but used this investigation as a pretext. Id. at ¶8. The plaintiff

---

[1] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

says he explained that as the defendants should be aware, he was not shy about filing complaints when he had a problem and that he does not write anonymous notes. Id. at ¶9. Baumann allegedly abruptly stated that the plaintiff was going on TLU. Id. at ¶10. Kettenhoven allegedly pat-searched the plaintiff and placed handcuffs on him. Id. at ¶11. The plaintiff states that Baumann leaned to the plaintiff's left ear and stated, "by the way, you can consider this my denial of your POA." Id.

The plaintiff alleges that "[u]pon information and belief, the anonymous note investigation did not meet the requirements to have someone placed on TLU, i.e., if the inmate remained in general population he would be an impediment to the investigation, a danger to the physical safety of others, or a disruption to the operation of the institution, but due to inadequate oversight the Defendants knew their placement would not be overruled." Id. at ¶16. The plaintiff states that the defendants intended to cause as much harm to him as they could and, aware that the plaintiff could only be held in segregation for twenty-one days without issuing him a conduct report related to the note investigation, Baumann and Kettenhoven conspired with Sergeant Bebo "to find cause to have the Plaintiff sent to segregation for a longer period of time." Id. at ¶17.

The plaintiff alleges that on February 9, 2018, Bebo listened to all the plaintiff's phone calls for evidence of misconduct but did not find any legitimate cause to write him a conduct report. Id. at ¶18. The plaintiff states that "[u]pon information and belief, on 2.10.18, Bebo reported to Defendants Baumann and

3

Kettenhoven that the only misconduct he found was that the Plaintiff used another inmate's PIN in order to make back-to-back phone calls while at recreation but that he had already received a minor conduct report for doing so." Id. at ¶19. The plaintiff alleges that the defendants agreed they would still have Bebo write another conduct report, but he says that if it was issued on February 10, it would overlap and effectively cancel the twenty-one days the plaintiff would be on TLU, so they agreed that they would wait until the plaintiff had served the twenty-one days on TLU and then have Bebo issue the duplicative conduct report. Id. at ¶20. The plaintiff alleges that, "[h]aving agreed to let the 21 day TLU expire without charges, Defendant Baumann wrote '2/16 No CR' on the Plaintiffs DOC-67, indicating that as of that date he officially cleared the Plaintiff from the anonymous note investigation." Id. at ¶21. Despite this notation, the defendants allegedly did not release the plaintiff from TLU on February 16 and made him sit in segregation another two weeks. Id. Baumann allegedly sent the plaintiff's POA to his segregation cell and the related complaint was dismissed based on Baumann's false statement to the inmate complaint examiner that the POA was not filled out completely. Id. at ¶22.

The plaintiff alleges that he was released back into general population on February 28, 2018, and the next day a security supervisor came to his cell and handed him a conduct report issued by Bebo. Id. at ¶23. The plaintiff allegedly reviewed the major conduct report in which Bebo stated that on February 10 he reviewed the plaintiff's phone calls and discovered that while at recreation

4

on January 31, the plaintiff had used the PIN numbers of other incarcerated persons. Id. at ¶24. He says that the report failed to explain why Bebo waited almost three weeks to issue the conduct report. Id. The plaintiff alleges that the supervisor offered him sixty days in segregation if he pled guilty to the conduct report. Id. at ¶25. The plaintiff allegedly stated that he already had received a minor conduct report for using the PINs of other incarcerated persons at recreation on January 31, and he asked how the same conduct could now support a major conduct report and two months in segregation. Id. The plaintiff says that the supervisor left to confirm the plaintiff's assertion and never returned. Id. at ¶26.

The court allowed the plaintiff to proceed on a claim that defendants Baumann and Kettenhoven retaliated against him when they allegedly interrogated him for something they knew he did not do (put unsigned request slips, or anonymous notes, in the prison mailbox) and then placed him in TLU without legitimate cause. Dkt. No. 15 at 9-10. The court did not allow the plaintiff to proceed on a claim that Baumann and Kettenhoven conspired with Bebo to retaliate against the plaintiff and dismissed defendant Bebo. Id. at 7-8.

B.  Plaintiff's Administrative Complaints

According to the defendants, the plaintiff submitted two administrative complaints potentially related to the claim in this case: GBCI-2018-4933 and GBCI-2018-5602. Dkt. No. 22 at ¶5. The plaintiff agrees that GBCI-2018-4933 relates to his claim in this case, but he states that GBCI-2018-5602 does not. Dkt. No. 36 at ¶5.

5

1. *GBCI-2018-4933*

The plaintiff signed complaint GBCI-2018-4933 (#4933) on February 22, 2018 complaining that defendant Baumann retaliated against him. Dkt. No. 22 at ¶6. In #4933, the plaintiff described the details of his complaint:

> I filed a complaint that Capt. Baumann was not responding back concerning the approval of a POA. A few days later I was called out into the rotunda to talk to him and he started asking me questions that made no sense, e.g., did I send an anonymous request about rumors about money not going to accounts and then said I was going to TLU. After I was handcuffed he said by the way you can consider this my denial of your POA. Shortly after going on TLU I received a conduct report for contraband that was never in my property.

Id. at ¶7. The institution complaint examiner rejected #4933 for scope on the following grounds:

> Inmate Howard complains that Capt. Baumann is retaliating against him by placing him in TLU and having staff write a conduct report for contraband.
>
> The complainant states a conduct report has been written, and is complaining of matters involved with the alleged incident. The complainant is challenging the factual basis of the conduct report or describing mitigating factors to explain the complainant's actions and behavior. Those matters are considered during summary disposition or by a hearing officer/committee acting as an independent fact-finding body, and its judgment must be accepted. Once a conduct report is issued, the disciplinary process is initiated, and complaints of this nature are outside the scope of the inmate complaint review system as noted under DOC 310.08(2)(a), Wis. Adm. Code.

Id. at ¶8.

The plaintiff appealed #4933, stating: "I am not challenging the contraband conduct report[.] I simply stated that I was erroneously charged with possessing contraband upon being placed on TLU without legitimate

cause." Dkt. No. 22 at ¶9. The rejection was upheld by Warden Scott Eckstein. Id.

2. *GBCI-2018-5602*

The plaintiff submitted complaint GBCI-2018-5602 (#5602) on March 6, 2018. Id. at ¶10. In #5602, the plaintiff complained that it took staff three weeks to issue him a conduct report after he was placed in TLU. Id. The conduct report at issue in this complaint, Conduct Report 3053722, was attached to the complaint record, and the ICE determined that it had been dismissed by the security director, so the plaintiff's complaint about the conduct report was dismissed by Warden Eckstein on March 15, 2018. Id. at ¶11. The plaintiff appealed #5602 to the Corrections Complaint Examiner (CCE), stating that there was no legitimate reason for staff to delay writing a conduct report for three weeks. Id. at ¶12. The CCE recommended dismissal of the appeal on March 29, 2018, and the Office of the Secretary dismissed the appeal on April 9, 2018. Id.

3. *Conduct Report 3006111*

On February 14, 2018, Officer Spencer issued the plaintiff Conduct Report 3006111 for allegedly violating Wis. Admin. Code Ch. DOC §303.47—possession of contraband. Dkt. No. 22 at ¶14. In his statement during the disciplinary hearing for the conduct report, the plaintiff did not allege any retaliation or make any complaints against defendants Baumann and/or Kettenhoven. Id. at ¶15.

In the plaintiff's appeal of the decision on the conduct report, he did not allege any retaliation or make any complaints against the defendants. Id. at ¶16. The plaintiff provided the following basis for his appeal: "The needles were not found in my property, the advocate never gave me a DOC-71, she did not inform me of how and when to turn in the DOC-73." Id. According to the plaintiff, he always has maintained that he was innocent of the allegations in Conduct Report 3006111 that he possessed the contraband, which necessarily means that it had to be the result of staff error. Dkt. No. 36 at ¶16. The plaintiff states that any motivation behind the error which resulted in the conduct report would not be an issue that was cognizable on appeal. Id.

    4.    *Conduct Report 3055247*

On January 31, 2018, Officer Hoheneder issued the plaintiff Conduct Report 3055247 for allegedly violating Wis. Admin. Code Ch. DOC §303.28—disobeying orders. Dkt. No. 22 at ¶17. Officer Hoheneder provided the following Description of Incident:

> On Jan 31st 2018 at approximately 3:10pm I CO Hoheneder was monitoring phone calls. I observed Inmate [redacted] using the phone at rec. Inmate [redacted] was shown to be at work. I called to rec and informed them of the inmate's behavior. When rec called back they informed me that inmate Howard, Joshua #271543 housed in B-29 had been on the phone using inmate [redacted's] pin. Per DAI policy inmates shall not use other inmates pins.

Id. at ¶18. The plaintiff's statement in response to the conduct report does not allege any retaliation or make any complaints against the defendants. Id. at ¶19. The sole statement the plaintiff provided as the basis for appeal was: "That seems a little steep for my 1st offense." Id.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Discussion

The defendants contend that the plaintiff has failed to exhaust his administrative remedies because he did not raise the issue of retaliation as a defense to either of the conduct reports, "which overlap with the issues raised in his inmate complaints." Dkt. No. 21 at 10. The defendants state that to exhaust his retaliation claim, the plaintiff had to raise retaliation as a defense to the conduct report and in his appeal to the warden. Id. The defendants contend that #4933, which the institution complaint examiner rejected because it complained of matters involving a conduct report, did not exhaust the plaintiff's claim because it was properly rejected. Id. The defendants state that the plaintiff sought to substantively challenge the conduct report, but only procedural deficiencies may be pursued through the ICRS (Inmate Complaint Review System). Id. The defendants state that the plaintiff's other administrative grievance, #5602, did not exhaust the plaintiff's retaliation claim because he did not allege retaliation in the grievance. Id. at 11.

The plaintiff responds that he is not proceeding on a claim that the defendants retaliated against him by issuing him a conduct report. Dkt. No. 35 at 1. Rather, the plaintiff says that his retaliation claim consists of his allegation that the defendants retaliated against him by interrogating him and unjustifiably placing him in TLU because he filed a grievance against Baumann. Id. The plaintiff contends that the defendants have not met their burden of establishing that he failed to exhaust. Id. at 2. He points out that the defendants falsely state that he was required to allege retaliation in the appeal

of two conduct reports, one of which predates the retaliatory conduct at issue, and neither of which are relevant. Id. The plaintiff also states that he was not substantively challenging a conduct in his administrative complaint that referenced a conduct report. Id.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendants bear the burden

of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The Wisconsin Department of Corrections' (DOC) Inmate Complaint Review System provides the administrative process for incarcerated individuals with complaints about prison conditions or the actions of prison officials.[2] Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated individual can file a lawsuit, he must exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code §DOC 310.05. Incarcerated individuals should use the ICRS to "raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints[.]" Wis. Admin. Code §DOC 310.08(1).

To use the ICRS, an incarcerated individual must file a complaint with the institution within fourteen days after the occurrence that gives rise to the complaint. Wis. Admin. Code §§DOC 310.07(1), 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§DOC 310.11(2), 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code §DOC 310.12(1). Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that

---

[2] The 2002 version of the Wisconsin Administrative Code was in effect until March 2018. The court cites to that version because the institution complaint examiner received #4933 on February 27, 2018, and cited to that version of the code in addressing the grievance.

decision by filing a written request for review with the CCE. Wis. Admin. Code §DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the DOC. Wis. Admin. Code §DOC 310.13(6). The secretary may accept, adopt or reject the recommendation, or return the appeal for further investigation. Wis. Admin. Code §DOC 310.14(2).

The ICE rejects some complaints at the institution level. Wis. Admin. Code. §DOC 310.11(5). In that case, the appropriate reviewing authority reviews only the basis for rejecting the complaint; he or she does not examine the merits of the complaint. Wis. Admin. Code §DOC 310.11(6). The reviewing authority's decision is final. Id.

"An inmate may not use the ICRS to raise . . . any issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." Wis. Admin Code §DOC 310.08(2)(a). After the disciplinary process has concluded, an incarcerated individual may appeal a "disciplinary decision," including procedural errors, to the warden within ten days after receiving a copy of the decision. Wis. Admin. Code §DOC 303.82(1). The warden then must review all records and forms relating to the appeals and make a decision within sixty days. Wis. Admin. Code §DOC 303.82(2). The warden's decision is final as it relates to sufficiency of the evidence. Wis. Admin. Code. §DOC 303.82(4). An incarcerated individual may, however, appeal claims of procedural error under the ICRS (DOC 310.08(3)). Id.

The defendants contend that the plaintiff has not exhausted his retaliation claim because he did not raise the issue of retaliation as a defense to either of the conduct reports he received. But the court did not allow the plaintiff to proceed on a claim that the defendants issued him a retaliatory conduct report. The plaintiff's claim is that the defendants questioned him for something they knew he didn't do and placed him in TLU in retaliation for the plaintiff filing a grievance against defendant Baumann. The plaintiff raised this issue in grievance #4933. The ICE interpreted the plaintiff's grievance to mean that he challenged the factual basis of the conduct report he mentioned in his grievance. But that interpretation is not consistent with the allegations in the plaintiff's amended complaint or with his grievance. The plaintiff's amended complaint alleges that the defendants questioned him for something they knew he did not do—putting unsigned request slips in the mailbox—as a pretext. The plaintiff did not receive a conduct report for putting unsigned request slips in the mailbox. The plaintiff states that his statement in #4933 about receiving a conduct report for contraband that was never in his property shortly after going on TLU was not meant to be interpreted as retaliatory conduct. Rather, he states that he included that information as context about the incident. The plaintiff's conduct report appeal is consistent with that interpretation.

The plaintiff's allegations in #4933 do not challenge the factual basis for any conduct report he received. The issue the plaintiff raised in the grievance is not related to a conduct report and the plaintiff was not required to raise the retaliation allegations in a disciplinary hearing. See Ravenwood-Alexander v.

Beahm, Case No. 17-cv-7-pp, 2018 WL 4188472, at *7 (E.D. Wis. Aug. 31, 2018) (citing Rivera v. Lindmeier, No. 13-C-124, 2013 WL 6806188, at *2 (E.D. Wis. Dec. 20, 2013)). Because the plaintiff did not receive a conduct report for sending anonymous requests, he could not have raised the issue in a disciplinary hearing.

For exhaustion purposes, the PLRA requires incarcerated individuals to give a prison "notice of, and an opportunity to correct, a problem." Price v. Friedrich, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting Schillinger v. Kiley, 954 F.3d 990, 995-96 (7th Cir. 2020)); see also Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)); Jones v. Bock, 549 U.S. 199, 219 (2007). It is not clear what more the plaintiff could have done to exhaust his retaliation claim that the defendants questioned him and placed him in TLU without cause. The ICE incorrectly interpreted the plaintiff's grievance as challenging a conduct report and rejected the grievance. The plaintiff has exhausted his retaliation claim because he raised the issue in his grievance, and he appealed the improper rejection of the grievance. See Pozo, 286 F.3d at 1023; Woodford, 548 U.S. at 102; Kaba, 458 F.3d at 684; Dole, 438 F.3d at 809. The defendants have not established that the plaintiff failed to exhaust his administrative remedies. The court will deny the defendants' motion for summary judgment.

### III. Conclusion

The court **DENIES** the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 20.

15

The court **ORDERS** that the deadline for the completion of discovery is **May 10, 2024** and the deadline for the parties to file motions for summary judgment on the merits is **June 14, 2024**.

Dated in Milwaukee, Wisconsin this 8th day of February, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**